IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

UNITED STATES OF AMERICA                                                        RESPONDENT

v.                                  Case No. 6:19-cr-60048
                                    Case No. 6:23-cv-6043

ANTONE COSTA                                                                       MOVANT

## ORDER

Before the Court is the Report and Recommendation filed by the Honorable Barry A. Bryant, United States Magistrate Judge for the Western District of Arkansas. ECF No. 73. Judge Bryant recommends that the Court deny Movant Antone Costa's Motion to Vacate Pursuant to 28 U.S.C. § 2255. ECF No. 73. Costa has filed objections. ECF No. 74. The Court finds the matter ripe for consideration.

## I. BACKGROUND

Movant Antone Costa was charged in a six-count indictment with controlled substance and firearms offenses.[1] Pursuant to a binding plea agreement under Fed. R. Civ. P. 11(c)(1)(C), Costa entered a plea of guilty to Count Four of the Indictment, charging him with the distribution of methamphetamine, and Count Six, charging him with possessing a firearm in furtherance of a drug trafficking crime.

As part of the binding plea agreement, Costa stated that he had discussed the plea agreement with his counsel and admitted that he had "committed each of the elements of the crime

---

[1]Specifically Counts One through Four charged Costa with distributing a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1). Count Five charged Costa with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Count Six charged Costa with knowingly possessing a firearm in furtherance of a drug trafficking crime, in violation 18 U.S.C. § 924(c)(1)(A).

to which [he] is pleading guilty, and admits there is a factual basis for this guilty plea." ECF No. 33, ¶ 2. Costa specifically admitted the following factual basis for the plea as outlined by the government:

> On September 16, 2019, after having obtained a state search warrant for the defendant's residence, officers surveilled the defendant leaving his residence at 129 Murray Street. A trooper with the Arkansas State Police made a traffic stop on the defendant and took him into custody for the aforementioned methamphetamine distribution. A search of his person revealed approximately 4 grams of methamphetamine, 29 suspected Clonazapam tablets and $823.00 in U.S. currency. In the passenger's seat in plain view, officers located a loaded Kel-Tec, 9mm pistol.
>
> The defendant was transported back to his residence while the search warrant was executed. It should be noted that the defendant is a convicted felon with a valid search waiver on file. A search of the residence revealed a black box in the front bedroom, the key to which was found on the key ring to the vehicle the defendant was driving. Inside the box officers located a stolen .45 caliber pistol and multiple empty baggies.
>
> The defendant was subsequently transported to the Garland County Detention Center and interviewed by Special Agent Josh Heckel. Subsequent to being advised of and waiving his Miranda rights, the defendant admitted to being a convicted felon and being in possession of the firearm seized from his vehicles, as well as his residence, and stated that guns were for protection. The defendant further admitted to the distribution of methamphetamine and stated that he sold approximately 2 to 3 ounces a week.
>
> Based on the prior controlled buys, large amount of U.S. currency, proximity of firearms and drug paraphernalia, as well as the statements made by the defendant, the United States could prove that Costa possessed a firearm in furtherance of the aforementioned drug trafficking activity.

ECF No. 33, ¶ 2. When asked by the Court that, if the matter was brought to trial, would the government be able to prove beyond a reasonable doubt the facts contained in the plea agreement, Costa responded, "Yes, Your Honor." ECF No. 58, pp. 19, 20. The Court noted that the sentence imposed under § 924(c) would not "run concurrently with any other term of imprisonment

imposed." ECF No. 58, p. 9. The Court found that Costa was "fully competent and capable of entering an informed plea, that [his] plea of guilty [was] both knowing and voluntary, and [was] supported by an independent basis of fact relative to the essential elements of the offenses." ECF No. 58, p. 21.

On June 17, 2022, in accordance with the plea agreement, the Court sentenced Costa. During the hearing, the Court discussed the Presentence Investigation Report ("PSR") with the parties. In light of his prior convictions, Costa was determined to be a career offender. As a career offender, Costa's guideline imprisonment range was 262 to 327 months for Count Four. However, the Court sentenced Costa to 151 months imprisonment for Count Four and 60 months on Count Six to run consecutively, for a total of 211 months imprisonment. ECF No. 47. Upon motion by the government, the Court dismissed Counts One, Two, Three, and Five.

Costa filed the instant Motion to Vacate under 28 U.S.C. § 2255, arguing that his sentence should be vacated due to ineffective assistance of counsel because his attorney allowed him to plead guilty to Count Six of the Indictment, which is the § 924(c) charge. Costa asserts that his counsel should not have allowed him to plead guilty to the § 924(c) charge because the government would not have been able to prove beyond a reasonable doubt that Costa possessed a firearm in furtherance of a drug trafficking crime. According to Costa, if he had been properly advised by his attorney, he would not have pleaded guilty to the § 924(c) count and would have instead proceeded to trial on it. Costa also asserts that his counsel was ineffective by not objecting to Costa's career offender classification.

Judge Bryant issued the instant Report and Recommendation (ECF N0. 73), in which he recommends that the Court deny Costa's motion. Judge Bryant separately addressed each of Petitioner's asserted grounds for relief and found that each was meritless. Judge Bryant found that

Costa's claim of ineffective assistance of counsel fails because the government could have proven beyond a reasonable doubt that Costa possessed a firearm in furtherance of a drug trafficking crime and because Eighth Circuit precedent supports the classification of Costa as a career offender. Costa objects to both findings. ECF No. 74. Pursuant to 28 U.S.C. § 646(b)(1), the Court will conduct a *de novo* review of Costa's specific objections.

## II. DISCUSSION

As noted above, Costa asserts that his counsel was ineffective by allowing him to plead guilty to the § 924(c) charge and by not objecting to Costa's career offender classification. The Court will address each issue below.

### A. Legal Standard for Ineffective Assistance of Counsel

"The right to counsel is a fundamental right of criminal defendants; it assures the fairness and thus the legitimacy, of our adversary process." *Kimmelman v. Morrison*, 477 U.S. 365, 374 (1986). The right to counsel includes the right to reasonably effective counsel. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). To prevail on an ineffective assistance of counsel claim, Costa must show that his attorney's performance fell below an objective standard of reasonableness and that he was prejudiced thereby. *Id.* at 688. There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.

When a claim of ineffective assistance of counsel involves an alleged attorney error during a legal proceeding, such as counsel failing to raise an objection at trial or to present an argument on appeal, a defendant "can demonstrate prejudice by showing 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lee v. United States*, 582 U.S. 357, 137 S. Ct. 1958, 1964 (2017) (quoting *Roe v. Flores-Ortega*, 528 U.S. 470, 481 (2000)). In the present case, Costa must demonstrate that, absent attorney error, he

4

would not have been sentenced as a career offender.

"When a defendant claims that his counsel's deficient performance deprived him of a trial by causing him to accept a plea, the defendant can show prejudice by demonstrating a 'reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Id.* at 364-65 (quoting *Hill v. Lockhart*, 474 U.S. 52, 59 (1985)). However, "[c]ourts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies. Judges should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* at 369. The inquiry "demands 'a case-by-case examination' of the 'totality of the evidence.'" *Id.* at 367 (quoting *Williams v. Taylor*, 529 U.S. 362, 391 (2000)). The "strong societal interest in finality has 'special force with respect to convictions based on guilty pleas.'" *Id.* at 368-69 (quoting *United States v. Timmreck*, 441 U.S. 780, 784 (1979)).

### B. Guilty Plea—924(c) Charge

Costa argues that his counsel was ineffective for allowing him to plead guilty to the § 924(c) charge because the evidence was insufficient to establish beyond a reasonable doubt that he possessed a firearm in furtherance of a drug trafficking crime. The firearms statute at issue provides that "any person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall . . . be sentenced to a term of imprisonment of not less than five years . . . ." 18 U.S.C. § 924(c)(1)(A)(i).

Costa argues that his possession of firearms in mid-September 2019 could not possibly have furthered the drug distribution offenses that occurred in the prior months of June and July that same year. He points out that there is no information in the presentence report or in the plea agreement indicating that he possessed a firearm on the occasions that he was charged with

distributing methamphetamine in June and July.  Costa further argues that there is no evidence that he admitted to possessing a firearm to protect drugs.  In sum, Costa contends that the government would not be able to prove at trial that he "possessed a firearm that had the effect of furthering any of the drug-distribution offenses alleged to have been committed by him in June and July 2019." ECF No. 74, p. 6.

In the Report and Recommendation, Judge Bryant noted that the government was only required to demonstrate that the possession of the firearm occurred within a "reasonable time" of the distribution or within a "reasonable time" of June and July 2019.  ECF No. 73, p. 6.  Judge Bryant determined that "[t]wo to three months is not an unreasonable time, and it is probable the firearm was connected to Costa's drug trafficking activity during June and July."  ECF No. 73, p. 6.  Costa objects to this finding, arguing that the government "was still fully obligated to prove—beyond a reasonable doubt—that the firearm was possessed *in furtherance of a drug trafficking crime*."  ECF No. 74, p. 7.

To prove this element, "the government must present evidence from which a reasonable juror could find a 'nexus' between the defendant's possession of the charged firearm and the drug crime, such that this possession had the effect of 'furthering, advancing or helping forward' the drug crime." *United States v. Sanchez-Garcia*, 461 F.3d 939, 946 (8th Cir. 2006) (quoting *United States v. Hamilton*, 332 F.3d 1144, 1149-50 (8th Cir. 2006)).

Costa argues that the government could not have presented evidence at trial that showed a clear nexus between the firearm discovered in September and the drug trafficking that occurred in June and July.  Costa points out that he never admitted to possessing a firearm any earlier than September and that the government has not identified any evidence suggesting Costa possessed any firearms in June or July.  Costa asserts that he would testify at an evidentiary hearing, if one

were to be held, that his possession of the firearms at issue was to protect himself from one particular individual who had made threats against him because of his romantic involvement with the individual's girlfriend. Costa also points to his interview with law enforcement on September 16, 2019, in which he states that he purchased the Kel-Tec firearm for $50 from a guy in the Fountain Lake area in Hot Springs, Arkansas. He further stated in the interview that he found the stolen .45 caliber pistol in his yard several days before the interview. According to Costa, the evidence in this case is insufficient to establish beyond a reasonable doubt that he possessed a firearm that had the effect of furthering any of the drug-distribution offenses alleged to have been committed by him in June and July 2019.

The Court agrees with Costa that the government would have been required to prove beyond a reasonable doubt at trial that Costa possessed a firearm on or about September 16, 2019, *and* that the firearm was possessed in furtherance of a drug trafficking crime. Whether the government could have proven this fact is a question that the Court cannot answer based solely on the record in its current state. Judge Bryant found that Costa's counsel was not ineffective because it was "probable the firearm was connected to Costa's drug trafficking activity during June and July." ECF No. 73, p. 6. However, whether a fact is probable and whether the government could prove that fact beyond a reasonable doubt are two entirely different standards.

Costa argues that the evidence was insufficient to convict him of possessing a firearm in furtherance of a drug trafficking crime[2] and contends that his attorney was ineffective by advising

---

[2] Although Costa may be correct in that mere presence of a firearm may not be sufficient to prove a violation of § 924(c), the Court notes that Costa admitted under oath that the United States could prove that Costa possessed a firearm in furtherance of drug trafficking activity and that he admitted to law enforcement that he carried the gun for "protection" because he had received threats. Costa's argument that the evidence was insufficient for a conviction contradicts the statement he made under oath regarding what the government would be able to prove as to the § 924(c) offense.

7

and allowing Costa to plead guilty to the § 924(c) offense (Count Six). Pleading guilty to the § 924(c) offense resulted in a mandatory five-year sentence imposed to run consecutively to Costa's sentence on the methamphetamine distribution count (Count Four), and thus Costa argues he was prejudiced by his counsel's deficient performance. Costa asserts that had he been properly advised, he would not have pleaded guilty to the § 924(c) count and would have instead proceeded to trial on this count. Costa asks the Court to vacate his conviction and sentence on Count Six because of the allegedly incorrect advice provided by his counsel.

The Court finds that a hearing is necessary to resolve Costa's claim that his counsel was ineffective by advising and allowing Costa to plead guilty to the § 924(c) count. *See Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013) (citation omitted) ("Evidentiary hearings on 28 U.S.C. § 2255 motions are preferred, and the general rule is that a hearing is necessary prior to the motion's disposition if a factual dispute exists."). Fact questions remain as to whether the performance of Costa's attorney fell below an objective standard of reasonableness and whether Costa was prejudiced by the performance. Some of these factual questions include whether evidence exists to sufficiently prove the § 924(c) count, what advice Costa's attorney gave to him, whether Costa would have proceeded to trial on the § 924(c) count, and whether Costa would have been permitted to plead guilty to only the methamphetamine-distribution charge. Accordingly, the Court declines to adopt Judge Bryant's finding that Costa's attorney was not ineffective by allowing Costa to plead guilty to the § 924(c) offense.

### C. Career Offender Classification

The Court moves now to Costa's claim that his counsel was ineffective because he failed to object to Costa's classification as a career offender under the United States Sentencing Guidelines ("Guidelines"). The Guidelines enhance a defendant's base level if the defendant has

"at least two prior felony convictions of either a crime of violence or a controlled substance." U.S.S.G. §4B1.1(a). A controlled substance offense is defined as:

> an offense under federal or state law, punishable by imprisonment for a term exceeding one year, that prohibits the manufacture, import, export, distribution, or dispensing a controlled substance (or a counterfeit substance) or the possession of a controlled substance (or a counterfeit substance) with the intent to manufacture, import, export, distribute, or dispense.

U.S.S.G. § 4B1.2(b).

Costa argues that his previous state felony conviction for possession of drug paraphernalia with intent to manufacture methamphetamine, pursuant to Ark. Code Ann. § 5-64-403(c)(5)(A) (2008), is not a controlled substance offense and cannot be used to enhance his sentence under the career offender guidelines. Costa contends that had his attorney raised an objection to his career offender classification, the Court would have granted this objection, which would have resulted in a lower sentence.

In the Report and Recommendation, Judge Bryant concluded that such an objection would have been meritless because the commentary to Guidelines § 4B1.2 states that "unlawfully possessing a prohibited flask or equipment with intent to manufacture a 'controlled substance offense'" is a controlled substance offense. ECF No. 73, p. 7 (citing U.S.S.G. § 4B1.2, cmt. n. 1). Costa objects to this finding, arguing that his Arkansas drug paraphernalia conviction does not qualify as a controlled substance offense because the Guidelines definition of controlled substance offense does not include possession of drug paraphernalia. Costa also argues that the drug paraphernalia conviction does not qualify as controlled substance offense under the related Guidelines application note.

The Court agrees with Costa that he does not qualify as a career offender under the text of §4B1.2, which defines controlled substance offense without reference to drug paraphernalia.

9

However, Note 1 in the commentary to §4B1.2 expressly states that in some instances possessing equipment with intent to manufacture a controlled substance will be considered a controlled substance offense.[3]  "Unlawfully possessing a prohibited flask or equipment with intent to manufacture a controlled substance (21 U.S.C. §843(a)(6)) is a 'controlled substance offense.'" U.S.S.G. § 4B1.2, cmt. n. 1.  Costa argues that the Guidelines commentary impermissibly expands the definition of a controlled substance offense, but the Eighth Circuit has rejected this argument. *See United States v. Garcia*, 946 F.3d 413, 417 (8th Cir. 2019); *United States v. Mendoza-Figueroa*, 65 F.3d 691, 694 (8th Cir. 1995) (recognizing that Note 1 to § 4B1.2 is a "reasonable interpretation of the career offender guidelines" that is "well within the Sentencing Commission's statutory authority").  The Court must follow Eighth Circuit precedent.

The Court now turns to Costa's argument that his prior conviction for possession of drug paraphernalia does not qualify as a controlled substance offense under the commentary to §4B1.2. Costa points out that, when referencing the possession of prohibited drug flasks and equipment, the application note refers to a specific statute, namely 21 U.S.C. § 843(a)(6).  Costa then argues that the application note does not apply to him because he was not convicted under this statute. Thus, the question is whether the Sentencing Commission intended to include state offenses that are equivalent to the specifically listed federal offenses in the commentary, and if so, whether a conviction under Ark. Code Ann. § 5-64-403(c)(5)(A) constitutes a conviction for a controlled substance offense.

---

[3]Costa argues that the definition provided in the text of § 4B1.2 controls and thus the Court should ignore the related application note because it is inconsistent with the guideline's text.  Costa cites to cases in some Circuits that agree with Costa that the commentary is inconsistent with the text of § 4B1.2, rendering the related application note ineffective.  However, it appears that the Eighth Circuit has not reached this same conclusion.  *See United States v. Mendoza-Figueroa*, 65 F.3d 691, 694 (8th Cir. 1995) (concluding that Note 1 to § 4B1.2 is a "reasonable interpretation of the career offender guidelines" that is "well within the Sentencing Commission's statutory authority").

10

First, Costa argues that because he was not previously convicted under 21 U.S.C. § 843(a)(6),[4] which is the relevant statute listed in the application note, he cannot be classified as a career offender. The Court rejects this argument because § 4B1.2 defines a "controlled substance offense" as "as offense under federal or *state* law, punishable by imprisonment for a term exceeding one year, that prohibits . . . the possession of a controlled substance." U.S.S.G. § 4B1.2(b) (emphasis added). The related guideline application note considers unlawful possession of a prohibited flask or equipment with intent to manufacture a controlled substance as a controlled substance offense for purposes of the career offender enhancement. Accordingly, the Court interprets the application note to include state offenses that are equivalent to the listed federal offenses.

Next, Costa argues that a violation of Ark. Code Ann. § 5-64-403(c)(5)(A) is not a categorical match for the conduct prohibited under 21 U.S.C. § 843(a)(6). To determine whether a prior conviction under Ark. Code Ann. § 5-64-403(c)(5)(A) meets the definition of a controlled substance offense, courts apply a "categorical approach." *See United States v. Campos*, 79 F.4th 903, 909 (8th Cir. 2023). "Based on the statutory elements only, [courts] must decide whether the 'state statute defining the crime of conviction categorically fits within the generic federal definition of a corresponding controlled substance offense.'" *Id.* (quoting *United States v. Maldonado*, 864 F.3d 898, 897 (8th Cir. 2017)). Courts must presume "that a defendant's prior conviction 'rested upon nothing more than the least of the acts proscribed by the state law' in question, and then determine 'whether even those acts are encompassed by' the Guidelines definition of a 'controlled substance offense." *Id.* (quoting *Maldonado*, 864 F.3d at 897); *see United States v. Castellanos*

---

[4]This statute is a catch-all prohibition on the possession of flasks, equipment, machines, products and chemicals for use in manufacturing controlled substances.

11

*Muratella*, 956 F.3d 541, 543 (8th Cir. 2020) ("To qualify as a predicate offense, [a state statute] must not criminalize more than the guidelines definition of a 'controlled substance offense.'" (cleaned up)).

"Where a statute is 'divisible,' that is, lists multiple elements in the alternative and 'thereby define[s] multiple crimes,' [courts] apply the 'modified categorical approach,' examining a limited class of documents—including the indictment, jury instructions, plea agreement, and plea colloquy—to determine which crime the defendant was convicted of." *United States v. Williams*, 926 F.3d 966, 969 (8th Cir. 2019) (quoting *Mathis v. United States*, 579 U.S. 500, 505 (2016)). Courts then compare the state crime, as the categorical approach commands, to the Guidelines' definition. *Mathis*, 579 U.S. at 506. Both Costa and the Government appear to agree that the Court should apply the modified categorical approach.

Costa was classified as a career offender based on two prior state court felony convictions, but he only challenges one of these prior convictions. Costa argues that his prior conviction for possession of drug paraphernalia with intent to manufacture methamphetamine, under Ark. Code Ann. § 5-64-403(c)(5), does not qualify as a controlled substance offense under the Guidelines.

The Arkansas law under which Costa was convicted provides:

> It is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to manufacture methamphetamine in violation of this chapter. Any person who pleads guilty or nolo contendere to or is found guilty of violating (c)(5)(A) of this section is guilty of a Class B felony.

Ark. Code Ann. § 5-64-403(c)(5) (2008). Drug paraphernalia is defined as:

> any equipment, product, and material of any kind that are used, intended for use, or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of this chapter.

12

Ark. Code Ann. § 5-64-101(12)(A) (2008). Costa argues that because a defendant can be convicted of the Arkansas offense for possession of drug paraphernalia with the intent to manufacture methamphetamine by possessing items not specifically listed in 21 U.S.C. § 843(a)(6), the Arkansas offense is overbroad and is not a categorical match for the Guidelines' definition of a controlled substance offense. For example, Costa notes that a defendant could be convicted under Ark. Code Ann. § 5-64-403(c)(5) of possession of drug paraphernalia by simply possessing some scales, envelopes, or baggies intended to be used in packaging methamphetamine, so long as sufficient corroborating evidence is present concerning a defendant's intent to use these items to manufacture methamphetamine.

The Court disagrees with Costa's argument that the Arkansas statute is overbroad. Under Arkansas law, it is unlawful to possess drug paraphernalia with the intent to manufacture methamphetamine. Ark. Code Ann. § 5-64-403(c)(5) (2008). Drug paraphernalia includes "any *equipment*, *product*, and *material* of any kind that are used, intended for use, or designed for use in . . . manufacturing . . . a controlled substance." Ark. Code Ann. § 5-64-101(12)(A) (emphasis added). Under federal law, it is unlawful for any person to knowingly or intentionally posses "any three-neck round-bottom flask, tableting machine, encapsulating machine, or gelatin capsule, or *any equipment*, chemical, *product*, or *material* which may be used to manufacture a controlled substance . . ., knowing, intending, or having reasonable cause to believe, that it will be used to manufacture a controlled substance . . . " 21 U.S.C. § 843(a)(6) (emphasis added). Both the Arkansas statute and the federal statute use similar language to prohibit the possession of any "equipment," "product," and "material" intended for use in manufacturing methamphetamine. The conduct prohibited in the Arkansas statute matches the conduct prohibited by the offense listed in the Guidelines. The Court concludes, therefore, that under the modified categorical approach,

13

Costa's state conviction for the possession of drug paraphernalia with intent to manufacture methamphetamine falls within the Guidelines' definition of a controlled substance offense. As a result, Costa's counsel was not ineffective for failing to object to Costa's classification as a career offender.

### III. CONCLUSION

Upon *de novo* review of the Report and Recommendation, and for the reasons discussed above, the Court finds that the Report and Recommendation (ECF No. 73) should be **ADOPTED IN PART**. The Court adopts the portion of the Report and Recommendation regarding Costa's career offender classification and finds that his counsel was not ineffective for failing to object to the classification. Accordingly, this claim is **DENIED**.

The Court **DECLINES TO ADOPT** the portion of the Report and Recommendation regarding whether his counsel was ineffective for allowing him to plead guilty to the 18 U.S.C. § 924(c)(1)(A) charge. The Court finds that because factual questions exist, a hearing is necessary to resolve this claim. Accordingly, by separate order, the Court will schedule a hearing as to this claim only.

**IT IS SO ORDERED**, this 29th day December, 2025.

/s/ Susan O. Hickey
Susan O. Hickey
United States District Judge