IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
HOT SPRINGS DIVISION

UNITED STATES OF AMERICA RESPONDENT

v. Case No. 6:19-cr-60048
Case No. 6:23-cv-6043

ANTONE COSTA MOVANT

**ORDER**

Before the Court is the Motion to Vacate under 28 U.S.C. § 2255 filed by Movant Antone Costa. ECF No. 68. The government filed a response. ECF No. 72. On August 20, 2026, the Court held a hearing on Costa's § 2255 ineffective assistance of counsel claim. ECF No. 83. Costa and the government filed post-hearing briefs. ECF No. 85, 89. The Court finds the matter ripe for consideration.

## I. BACKGROUND

Costa was charged in a six-count indictment with controlled substance and firearms offenses.[1] Costa retained attorney Josh Hurst ("Hurst") to represent him. Pursuant to a binding plea agreement under Fed. R. Civ. P. 11(c)(1), Costa pled guilty to Count Four of the Indictment, charging him with the distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1), and Count Six of the Indictment, charging him with possession of a firearm in furtherance of a drug trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A). ECF No. 33.

In the plea agreement, Costa admitted to the factual basis for the plea as outlined by the government. The factual basis states that law enforcement officers, though the use of a confidential

[1] Specifically, Counts One through Four charged Costa with distributing a mixture or substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1). Count Five charged Costa with being a felon in possession of a firearm, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Count Six charged Costa with knowingly possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

informant, made four purchases of methamphetamine from Costa between June 20, 2019, and July 23, 2019. ECF No. 33, at ¶ 2a. The factual basis further states that, on September 16, 2019, the officers located the following during a valid search and seizure: (1) 3 grams of methamphetamine, 29 suspected Clonazepam tablets, and $823.00 on Costa's person; (2) a Kel-Tec 9mm pistol in the passenger seat of Costa's car; and (3) a stolen .45 caliber pistol and multiple empty baggies in a locked box inside Costa's home. *Id.* at ¶ 2b-c. The factual basis states that Costa admitted to selling approximately 2 to 3 ounces of methamphetamine per week and that the guns seized in his vehicle and house were for protection. *Id.* at ¶ 2d. The factual basis states that the government could prove, based on the prior controlled buys, large amount of U.S. currency, proximity of firearms and drug paraphernalia, and Costa's statements, that Costa possessed a firearm in furtherance of drug trafficking activity. *Id.* at ¶ 2e. As part of the plea agreement, Costa affirms he discussed the facts within the plea agreement with Hurst and admits to committing "each of the elements of the crime to which [he] is pleading guilty, and . . . that there is a factual basis for this guilty plea." *Id.* at ¶ 2.

On August 3, 2021, Costa appeared before the Court for a change of plea hearing. ECF No. 32. During the change of plea hearing, the Court informed Costa of the statutory penalties for Count Four (distribution of methamphetamine) and Count Six (possession of a firearm in furtherance of drug trafficking activity, or "§ 924(c)"). ECF No. 58, at 8-10. Relevant here, the Court asked whether Costa understood that the sentence imposed under § 924(c) is "not less than five years . . . imprisonment" and shall not "run concurrently with any other term of imprisonment." *Id.* at 9. Costa answered affirmatively. *Id.* at 9-10. The Court also warned Costa that Mr. Hurst "may be able to give you an idea [of] what he believes the [sentencing] guideline range will be, but that is just an educated guess" because he will not know the guideline range until

he receives the presentencing report. *Id.* at 12. Costa affirmed that he understood and proceeded with his change of plea. *Id.* at 12-14.

The government then read the factual basis of the plea agreement into the record. ECF No. 28, at 14-15. Costa testified that he had read and reviewed the plea agreement with Hurst. *Id.* at 17. The Court twice asked Costa whether "the government would be able to prove everything in the stipulation of facts contained in the plea agreement beyond a reasonable doubt" at trial. *Id.* at 19-21. Costa testified that the government would. *Id.* Costa also affirmed his satisfaction with Hurst. *Id.* at 19. The Court found that Costa was fully competent and capable of entering an informed plea, that his plea was knowing and voluntary, and that his plea was supported by an independent basis of fact relative to the essential elements of the distribution and § 924(c) offenses. *Id.* at 21.

On June 17, 2022, the Court sentenced Costa in accordance with the plea agreement. ECF No. 47. During the sentencing hearing, the Court reviewed the pre-sentence report ("PSR") page by page with Costa after he informed the Court that he did not understand the report and had not "really read it." ECF No. 54, at 9-20. Though Costa stated that he did not understand the PSR, Costa affirmed that Hurst explained it to him in such a way that he was comfortable proceeding with sentencing. *Id.* at 12. After the Court explained Costa's guideline range in the PSR, Costa told the Court that he was under the impression when he signed the plea that he would receive the mandatory 5 year minimum sentence on "that one count" and would receive "maybe another 5 years or something like that" on the other count. *Id.* at 21. The Court noted that it informed Costa during the plea hearing of Hurst's inability to predict his guideline range before receiving the PSR. *Id.* at 22. The Court sentenced Costa to one hundred fifty-one (151) months imprisonment on Count Four and sixty (60) months imprisonment on Count Six to run consecutive to Count Four,

for a total of two hundred eleven (211) months.[2] ECF No. 47.

On April 6, 2023, Costa filed a Motion to Vacate under 28 U.S.C. § 2255. ECF No. 68. Costa asserts that his Sixth Amendment rights were violated because he received ineffective assistance of counsel from Hurst. *Id.* at 5. Specifically, Costa asserts that Hurst was ineffective for advising and allowing him to plead guilty to the § 924(c) offence, to which he argues his innocence, and for failing to object to the application of the career offender enhancement. *Id.* Only the first assertion is before the Court today.[3]

In the Motion, Costa argues that Hurst was ineffective for allowing him to plead guilty to the § 924(c) offense because the government has insufficient evidence to prove beyond a reasonable doubt his possession of the firearms was in furtherance of the drug distribution offenses that occurred in June and July 2019. Costa contends that there is no information in the plea agreement or PSR indicating that he possessed a firearm in June or July. The PSR reflects that Costa said he found the stolen .45 caliber pistol in his yard a week and a half prior to the September 2019 search and seizure. ECF No. 37, at 8. Costa argues that the evidence does not indicate that he participated in a trafficking offense while in possession of the 9mm firearm seized from his car because he was in possession of only a small amount of methamphetamine at the time of its seizure. Costa asserts that he purchased the 9mm firearm for protection after an individual made threats against him due to Costa's romantic involvement with that individual's girlfriend. Costa contends that the $823.00 seized from his car was money he earned working as a taxi driver and was

[2] Costa's guideline range for Count Four was increased from 151 to 188 months to 262 to 327 months due to his career offender status and to his § 924(c) conviction. ECF No. 54, at 34. Based on the 18 U.S.C. § 3553(a) factors, the Court found the guideline range to be excessive and reduced his sentence to 151 months imprisonment for Count Four, followed by the minimum mandatory 60 months for Count Six. *Id.* at 34-35.

[3] In the Report and Recommendation considering Costa's Motion to Vacate, Judge Bryant recommended that the Court deny Costa's Motion on both grounds. ECF No. 73. This Court adopted the recommendation as to Costa's ineffective assistance of counsel argument on the career offender enhancement ground and declined to adopt the recommendation as to Costa's ineffective assistance of counsel argument on the § 924(c) offense ground.

unconnected to drug trafficking activity. Thus, Costa argues that there is no possible connection between his possession of firearms in September and the distribution of methamphetamine in June and July.

Costa asserts that despite this lack of connection, Hurst advised him to accept the plea offer, which required him to plead guilty to one of the methamphetamine distribution offenses and the § 924(c) offense. Costa states that Hurst informed him on multiple occasions that he anticipated Costa would receive a sentence within the range of 60 to 80 months, despite the fact that the § 924(c) offense carries a mandatory consecutive 5-year sentence. Costa argues that he did not fully understand the nature of the § 924(c) offense due to lack of communication with Hurst. Costa explains that he twice informed Mr. Hurst that he never made any statement that he used a firearm to protect any drugs and that Mr. Hurst said he understood and assured Costa he would take care of it. Costa claims that this incorrect legal advice prejudiced him because his guilty plea to the § 924(c) offense resulted in a mandatory 5-year sentence imposed to run consecutive to his sentence on the methamphetamine-distribution count. Costa alleges that months went by without communication until one day Hurst video called Costa to encourage him to take the plea deal.

In response to Costa's Motion, the government argues that the date discrepancy between September 2019 and June to July 2019 is not a material element of the § 924(c) offense and that it is not "clearly improbable" that the firearm was connected to Costa's drug trafficking activity. ECF No. 72. In the Report and Recommendation, Judge Bryant agreed with the government that it "was only required to demonstrate the possession occurred within a 'reasonable time' of the distribution or within a 'reasonable time' of June and July of 2019." ECF No. 73, at 6. Judge Bryant found that two to three months is not an unreasonable time and that it is probable that the firearms were connected to Costa's drug trafficking activity in June and July. *Id.* Thus, Judge

Bryant found that Costa's counsel was not ineffective for allowing him to plead guilty to the § 924(c) offense.

This Court declined to adopt Judge Bryant's finding that Costa's counsel was not ineffective by allowing him to plead guilty to the § 924(c) offense. The Court explained that the correct standard is whether the government could prove beyond a reasonable doubt at trial that Costa possessed a firearm and that the firearm was possessed in furtherance of a drug trafficking crime, not whether it was "probable the firearm was connected to Costa's drug trafficking activity during June and July." ECF No. 76, at 7. This Court concluded that a hearing was necessary to resolve the questions of whether the performance of Costa's counsel fell below an objective standard of reasonableness and whether Costa was prejudiced by his counsel's performance.

On August 20, 2026, the Court held an evidentiary hearing on Costa's § 2255 Motion. ECF No. 83. Both Costa and Mr. Hurst testified at the hearing. Both Costa and the government filed post-hearing briefs. ECF Nos. 85, 88.

## II. LEGAL STANDARD

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . have the Assistance of Counsel for his defense." U.S. CONST. amend. VI. The right to counsel does not guarantee perfect or error-free assistance. *United States v. Miell*, 711 F. Supp. 2d 967, 983 (N.D. Iowa 2010). Rather, "the right to counsel is the right to the *effective* assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970) (emphasis added).

To prevail on an ineffective assistance of counsel claim, the movant must show that his counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by the below-standard performance. *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984). "The two part *Strickland v. Washington* test applies to challenges of guilty pleas based on

ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985). The court must "judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Strickland*, 466 U.S. at 689.

To satisfy the first prong, the movant "must overcome the strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance." *Davis v. Norris*, 423 F.3d 868, 877 (8th Cir. 2005) (citing *Strickland*, 466 U.S. at 689). The Supreme Court has emphasized that "strict adherence" to *Strickland's* deferential standard is "all the more essential when reviewing the choices an attorney made at the plea bargain stage" because plea bargains "are the result of complex negotiations suffused with uncertainty, and defense attorneys must make careful strategic choices in balancing opportunities and risks." *Premo v. Moore*, 562 U.S. 115, 124-25 (2011).

To satisfy the prejudice prong where the movant accepted a guilty plea, the movant "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58-59. "Courts should not upset a plea solely because of *post hoc* assertions from a defendant about how he would have pleaded but for his attorney's deficiencies." *Lee v. United States*, 582 U.S. 357, 369 (2017). Instead, courts should "look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* The inquiry "demands a case-by-case examination of the totality of the evidence." *Id.* at 367 (quotations omitted).

## III. DISCUSSION

The Court must determine two issues. First, whether Hurst's conduct falls below the objective standard of "reasonable professional assistance." *See Davis v. Norris*, 423 F.3d at 877 (citing *Strickland*, 466 U.S. at 689). Second, whether, but for Hurst's alleged ineffective

assistance, Costa would have insisted on going to trial rather than pleading guilty. *See Hill*, 474 U.S. at 58-59.

**A. Deficient Performance**

Costa asserts that Mr. Hurst's performance was below standard in three ways. First, Costa argues that Mr. Hurst should not have permitted him to plead guilty to the § 924(c) offense because there is no evidence demonstrating that the firearms he possessed in September 2019 were possessed in furtherance of the drug trafficking offenses he allegedly committed in June and July 2019.[4] At the § 2255 hearing, Costa testified that Hurst never went over the nature of the § 924(c) offense or provided Costa with evidence that the Government could prove Costa had a firearm with him during any of the sales of methamphetamine described in the Indictment. Section 2255 Hearing Transcript (hereinafter, "Tr."), at 14.

Hurst, on the other hand, testified that he had "a number of conversations" about the § 924(c) count with Costa in which he considered Costa's "explanations as to why he had the gun." Tr. at 40. Hurst testified that he tried to explain to Costa that Costa's "defenses or excuses or reasons why he may have had the gun . . . didn't rise to the level . . . [of] a good defense to be found not guilty of that count." *Id.* Hurst also testified that he adequately reviewed discovery with Costa to show him that the government could prove his guilt on the § 924(c) count. *Id.* at 41. Hurst testified that Costa sent him a letter in April 2020 in which Costa admitted to receiving "the gun" from the confidential informant "days before [the first] controlled buy." *Id.* at 50; ECF No.

[4] Section 924(c) provides that "any person who, during and in relation to any . . . drug trafficking crime . . . uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall . . . be sentenced to a term of imprisonment of not less than five years . . . ." 18 U.S.C. § 924(c)(1)(A)(i). To prove § 924(c)(1)(A), "the government must present evidence from which a reasonable juror could find a 'nexus' between the defendant's possession of the charged firearm and the drug crime, such that this possession had the effect of 'furthering, advancing, or helping forward' the drug crime." *United States v. Sanchez-Garcia*, 461 F.3d 939, 946-47 (8th Cir. 2006) ("The jury must be able to infer that the defendant's possession of the firearm facilitated the drug crime, through evidence that the firearm was used for protection, was kept near the drugs, or was in close proximity to the defendant during the drug transaction.").

88-1, at 4 (Letter). Hurst testified that he believed the facts of Costa's admission in the letter, Costa's proffered reasons for having the gun, and the possibility that the confidential informant may testify at trial that Costa had the gun during the controlled purchases were "dangerous" for Costa. Tr. at 55-56.

The Court finds Costa has not shown that Hurst's performance fell below the "wide range of reasonable professional assistance" by permitting him to plead guilty to the § 924(c) offense. *See Strickland*, 466 U.S. at 689. If anything, Hurst's testimony, which the Court finds credible, demonstrates the "careful strategic choices in balancing opportunities and risks" an attorney must consider during plea bargains. *Premo*, 562 U.S. at 124-26 (directing courts to accord substantial deference to an attorney's judgment at the plea bargain stage). If Hurst had not encouraged Costa to plea, the government may have "uncover[ed] additional incriminating evidence," such as testimony by the confidential informant about when Costa began possessing the guns and whether Costa's possession was in furtherance of drug trafficking. *Id.* Additionally, Hurst testified that he attempted to negotiate dropping the § 924(c) count from the plea agreement pursuant to Costa's concerns. Tr. at 40.

Further, Costa testified at his change of plea hearing that he reviewed the plea agreement with Hurst and understood it. ECF No. 58, at 17. Costa did not assert his innocence to the § 924 offense during his change of plea. Rather, he testified that if his case was brought to trial, the government would be able to prove everything in the stipulated facts of the plea agreement beyond a reasonable doubt. *Id.* at 19. Costa's argument that he did not understand the nature of the § 924(c) offense during his plea hearing is belied by Hurst's testimony that they discussed that offense, including the "possible . . . defenses or excuses or reasons why he may have had the gun." Tr. at 40.

Second, Costa argues that Hurst erroneously informed him that he would receive a sentence of between five and eight years if he accepted the plea deal and failed to explain the mandatory minimum five-year sentence of the § 924(c) offense or its consecutive nature. Costa and Hurst offered conflicting testimony at the § 2255 hearing. Costa testified that Hurst "had [him] believing [he] was getting between five and eight years" before Costa signed the plea agreement. Tr. at 12-13. Costa testified that he pled guilty in reliance of Hurst's alleged promise that he would receive a five- to eight-year sentence. *Id.* at 18. Costa testified that he learned of his actual guideline range for the first time on the day of his sentencing. *Id.* at 17-18. Hurst, on the other hand, testified that he never told Costa that he would receive a five- to eight-year sentence. *Id.* at 46.

The Court finds Hurst's testimony credible. However, even if Hurst did in fact suggest to Costa that he would receive a five- to eight-year sentence, the Court itself warned Costa that his attorney could not know his sentencing range until the PSR was issued. At the plea hearing, the Court informed Costa of the maximum possible penalty of the distribution count and mandatory minimum sentence of the § 924(c) count. ECF No. 58, at 8-9. The Court also advised Costa that while "Hurst may be able to give [Costa] an idea [of] what he believes the guideline range will be, . . . that is just an educated guess." *Id.* at 12. Costa affirmed that he understood and proceeded to plead guilty to both counts. *Id.* For that reason, the Court cannot find that Costa received inefficient assistance of counsel on this ground.

Third, Costa argues that Hurst's assistance fell below the constitutional standard due to his lack of communication throughout his representation of Costa. ECF Nos. 68, at 7; 85, at 8-9. Costa argues that Hurst visited him in person only once, during which he provided "partial discovery,"[5] and otherwise infrequently contacted him via phone or video conference. ECF No.

[5] Though Costa testified that he was shown only "partial discovery," Hurst testified that they went over all the discovery produced in Costa's case. Tr. at 7, 47-48.

85, at 8. Costa also claims that he and his parents repeatedly attempted to contact Hurst by phone and letter without response. *Id.* at 9. Costa argues that he did not have a full and accurate understanding of the nature of the § 924(c) count and was unable to review his PSR due to the minimal communication. *Id.* at 8.

While Hurst's assistance was not perfect, the Court finds that Costa has not shown Hurst's performance fell below the objective standard set out in *Strickland.* Hurst testified that there were restrictions on in-person communication due to the COVID-19 pandemic. Tr. at 47. Hurst also testified that he generally meets with his clients "enough to get the facts" and their position, but that most of the "heavy lifting . . . takes place in [his] office trying to put together a strategy." *Id.* at 51. Further, at his plea hearing, Costa testified that he was satisfied with Hurst's assistance. ECF No. 54, at 12. And at his sentencing hearing, Costa affirmed that, though he had not read the PSR "word for word," he felt that Hurst explained it to him such that he was comfortable proceeding. ECF No. 58, at 19.

Accordingly, the Court finds no deficient performance by Hurst.

**B. Prejudice**

Even if Hurst's performance were deficient, the Court finds that Costa cannot establish prejudice. In other words, Costa has not shown that, but for Hurst's errors, "he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 58-59. In exchange for Costa's guilty plea, the government dismissed three drug distribution counts and one felon in possession count. It is unclear whether the government would have permitted Costa to go to trial on the § 924(c) count alone, or whether Costa would have chosen to go to trial on all counts. *See Roland*, No. 8:16CR15, 2018 WL 4190052, at *4 (D. Neb. Aug. 31, 2018) (finding no prejudice when the government dismissed nine drug distribution counts in exchange for a guilty plea). Costa

has not pointed to any contemporaneous evidence demonstrating that he would have gone to trial had he understood the nature of the § 924(c) charge. *See Lee*, 582 U.S. at 369 (requiring courts to look to contemporaneous evidence, rather than *post hoc* assertions, that a defendant would not have pleaded but for his attorney's deficiencies). In fact, Hurst's testimony—that he believed the government could "[o]ne hundred percent" prove Costa's guilt on the § 924(c) offense, that the confidential informant's testimony may be "dangerous" for Costa, and that Costa's explanations as to why he had the gun were not good defenses—suggests that Costa ultimately would not have insisted on going to trial. Tr. at 40-41, 56.

Costa has not met his burden to show that Hurst's assistance fell below reasonable professional assistance or that there is a reasonable probability that, absent Hurst's errors, he would have proceeded to trial. Thus, the Court finds that Costa's § 2255 motion to vacate must be denied.

## IV. CONCLUSION

For the reasons discussed above, the Court finds that Antone Costa's Motion to Vacate under 28 U.S.C. § 2255 (ECF No. 68) is **DENIED**.

**IT IS SO ORDERED**, this 29th day of September, 2026.

/s/ Susan O. Hickey
Susan O. Hickey
Senior United States District Judge